and others, 20-10071. We've got Mr. Cash, the appellant, and the cross-appellee, and then Ms. Waldron, Mr. Walker, Mr. McLeod for the appellees, cross-appellants. Mr. Cash, once they're settled, whenever you're ready, you can fire away. Thank you, Your Honor. My name is Bill Cash. I represent the appellants, the estate of Jeffrey West and Kim Ellis. And may it please the court, and I would like to echo briefly the court's welcome back to us to be here in person. It is indeed a joy. We have two major arguments to make here, and our primary argument is the district court just misapplied the Alabama law that governed relating back in fictitious party practice under these particular circumstances. So at the risk of causing you to flip your outline, can we address what I take to be the threshold issue about whether the district court could kind of claw this order back? Sure. Let's start there, if you don't mind. Well, Judge Grenade found that it was entirely appropriate to continue with the action after the court misinterpreted the stipulation between the parties to dismiss the sheriff and dismiss the county. But how do you do that when we have case law from this court that says you can't reopen once you enter an order dismissing the case? Because the district court made a mistake, and Rule 60A permits the district court to But Judge Wilson wrote a very strong opinion that didn't give an exception. So how do you get an exception under our current precedent? Well, I believe our precedent is that if the parties have made a stipulation, the court can enter it. But the court has to enter what the parties actually agreed to. And what the parties agreed to was the stipulation of the sheriff and the county to be dismissed, but not the John Does. But the rule talks about all parties who've made an appearance, and there were no other parties that had made an appearance at that moment in time. That's correct, Your Honor. But there's no way to reconcile the court's permission of fictitious party practice with a rule like that. The court also has case law that permits parties to proceed against fictitious parties. And that was our intent. And the district court misinterpreted our intent. The district court acknowledged that. All three of the federal judges to handle this case in the district court proceeded on that understanding. And litigation continued on for two or three years after the case was reopened. So are you proceeding in this court solely under Rule 60A? You agree that there was no timely appeal. There was no timely Rule 59. For reasons that aren't immediately apparent to me, you might be able to explain them, you and the district court have forsworn any reliance on 60B. And so now we're traveling solely under 60A. We're under 60A, and I think Judge Grenade and I think Judge Moore got it right when they pointed out no judgment had been entered. There was nothing to appeal from, and the district court had the ability to retain jurisdiction over the case and use 60A to go back and correct its order in properly dismissing the fictitious party. What do you do with – I mean I take our precedent interpreting Rule 60A to impose sort of two conditions. One is the district court – 60A is not a ground for clawing back when the district court sort of changes its mind. Only for a clerical error or sort of an error in translation, if you will. And then secondarily, only where the clawing back will not affect the substantial rights of the party. So let's talk about number one first. What's the evidence that the district court simply made a mistake? Judge Grenade's opinion, where Judge Grenade says, you know, I didn't understand that the party stipulated to dismissing only the – So I guess I think that might be read a different way. I mean she says that the plaintiffs wanted to dismiss only the named defendants. That's correct. And then like in the next sentence she says the parties in the court weren't on the same page. And so I mean isn't one plausible reading of that that I had a different sort of intent at the time. The plaintiffs wanted to dismiss only the named parties. I wanted to dismiss everybody. And now they've sort of come back to me and said this is monumentally unfair and I've changed my mind. I mean if that's the scenario, then 60A doesn't work, right? Well, I don't know that I quite agree with your reading of that, Your Honor. And I think that sentence actually supports us enormously. When Judge Grenade said the parties in the court were not on the same page, she's saying that the court made a mistake and the court did not enter the stipulation that the parties to the case had actually agreed to. And she was correcting an error. Now to get to point two, the question about whether this affects the substantive rights of any of the other parties, I don't believe it did because they weren't parties to the case at the time. And the plaintiff had the right to proceed under the fictitious party practice the entire time in the action. And nothing about a stipulation dismissing two named parties should have affected their rights. Go ahead, please. Well, but I guess the question I'm having is when the stipulation was done, it was a voluntary dismissal which was allowed under Rule 41A1A2. And it's a stipulation of dismissal signed by all the parties who have appeared. And at that moment in time, all the parties who had appeared signed the stipulation and then the case was dismissed. Well, actually, the reality is that there was really no reason for the trial court judge, the district court judge to enter an order after that stipulation was done under our current precedent, correct? Because the stipulation is self-executing. It's self-executing. So there's no reason for anything else to be done. So once the parties do that, that voluntary dismissal, that's it. The case is over. So how again, going back to the initial question, how then did the trial court judge or district court judge have the ability to reopen the case? Because the parties did not intend the effect that was actually executed by the court. But don't you have to then have to file a new lawsuit? I mean, I don't see how you can reopen the case based on the existing, the current case that now is closed. Well, our position is that the court can't enter an order that's in error and the court misinterpreted what the stipulation between the . . . That stipulation is self-executing. Once you do that, the case is done. It's closed. The order . . . That order is as if it never happened. That wasn't our intent and district court should not go about entering . . . In fact, isn't our current precedent, the law is that the way it should be done is the district court judge enters an order first and then the stipulation is done. I'm not following. I apologize. There's a case, I think Judge Wilson wrote it, that talks about how the rule should proceed if the parties want the district court judge to maintain jurisdiction. The trial court has to do something, enter an order saying, I'm going to retain jurisdiction of this case in order to either deal with some miscellaneous matters or in order to make sure that the stipulation is enforced and then the stipulation is entered after the trial court judge enters the order. The other way around because once the stipulation is done, there isn't any order to be signed by the district court judge. I understand that and I understand that the stipulation is self-executing but our position is going to remain that the plaintiffs did not intend to dismiss these other parties and it would be an injustice to do so. The grounder of the complaint, the entire complaint, 80-90% of it, states allegations against these John Does. It certainly would not have been our intent to dismiss the bulk of our lawsuit by accident and both of the district judges to handle this case acknowledge that and I think 68 does supply the grounds because 68 permitted those judges to reopen the case and correct a mistake that was made. Can I ask you just a quick question? I don't think I quite followed earlier your response about the substantive rights of the parties. I mean why wouldn't the unnamed defendant say, oh, our substantive rights are most certainly being affected because now we're going to have to have like years of litigation and potential liability, like of course they're being substantively. No, Your Honor, nothing about their substantive rights changed. They were parties to a lawsuit, albeit named fictitiously because we couldn't get their names and couldn't identify who they were, but they were parties to a case and they have no right to sort of travel under a stipulation that doesn't name them to then secure a dismissal with prejudice for all time that immunizes them from liability. Our clear intent was to proceed against those parties and their substantive rights, they shouldn't get a freebie essentially. Let's talk about the fictitious party pleading. Sure. I mean you have to really be able to at least identify them with some specificity, i.e. it's the sheriff of Pullman County and so you may not know his name, but you know it's the sheriff of Pullman County or you identify them in some manner. I mean when you look at the complaint, there is nothing that identifies any of these individuals with specificity. You need to be able to know who you need to serve. Your Honor, that's true if you're proceeding under Dean v. Barber and that's our backup argument that Dean v. Barber, the case from this circuit, should be overruled by an en banc court because it's out of line with all of the other circuits where we have been able to find fictitious party pleading. In other circuits, you would look at the information available to the plaintiff and you would also consider the prejudice to the defendants and none of the defendants here can argue that they were prejudiced when they all participated in an investigation of this death and in fact some of them were contacted prior to the death. There's no prejudice on them. But to get to the Alabama rules, Alabama Rule 9H is incorporated because it travels with the 1983 statute of limitations that applies here and the Alabama case law says that the party can have fictitiously named defendants if the party exercises due diligence. It's the Columbia engineering case that says this fictitious party rule is a liberal rule and ex parte nail says due diligence means ordinary, not extraordinary diligence. Let's talk about that due diligence for a second and I understand and you've given us sort of all of the efforts that were undertaken before the lawsuit was filed to gain this information and look, I think the other side concedes that you were not getting cooperation but this went on for a while, this lack of cooperation and even when the lawsuit was filed, when you know the statute of limitations is imminently about to run, why are you not immediately alerting the court we have an emergency situation and seeking court intervention now and that just didn't happen when the lawsuit was filed and then the lawsuit was progressing and there are gaps of time from after the lawsuit was filed where there is inactivity. So why would we find due diligence here in light of that record? First of all, we made 20 separate attempts under HIPAA, under the Open Records Act. You were being stonewalled, let's just concede that point. We were. So why did it take so long to ask a court to intervene? Because there are a number of cases on the books that say a party can file suit and then use the normal court discovery process to go out and get discovery. For example, Mann v. Darden, the plaintiffs filed suit one day prior to the expiration of the statute of limitations and then the court dinged them because they'd waited 11 months to put out a subpoena. That wasn't our circumstance here. We sought an immediate 26-F with the defendant, stonewalled again, and we advised the court that the result of that conference was we couldn't identify the John Doe defendants. Ex parte nil is another case that's a lot like ours. It's a state Supreme Court case from 2012. The plaintiff filed suit a month before the running of the statute of limitations. The court gave them five months to do discovery, and the court held it is not – the court denied a motion like this, seeking to have the statute of limitations bar the claim. So what happened here is Judge Moorer basically punished us for – in our view, in effect, took away our ability to travel under fictitious party pleading because he found we didn't do enough prior to filing suit. There are plenty of cases where you can wait up to the last day of the last month to file suit and then have time. So we were following the local rules. The local rules required us to have a 26-F conference. We did that, and we tried to do everything we could to get the information. It was clearly apparent to us and to the court. We advised the court of that in our motion, and we knew that that was important, which is why we listed it out in our complaint. I hope that answers your question, George Branson. I don't want to go over my time. If Judge Lagoa has a question, then you must. It's just a question regarding – it's the case, the Inago franchising case, which is obviously our existing precedent where we talk about how a district court judge no longer has jurisdiction once a voluntary dismissal is taken under Rule 41A. You can talk about it maybe in your rebuttal, but I'd like you to address that. We're bound by that case, and I'm having difficulty understanding how we get around that case. I appreciate that, Your Honor. Thank you. Okay, Ms. Waldron, are you going to kick it off for the appellees? Very good. May it please the court, I'm Christy Waldron. I represent the Van Landingham Estate and Dr. Van Landingham's widow as its personal representative. The only ruling of the district court that was challenged by the plaintiffs on appeal was the due diligence ruling, but the district court didn't base its relation-backed decision solely on the due diligence issue. It also determined that the defendants weren't described with sufficient specificity. So, can I ask you, and I recognize that you guys have divided your argument, and so this may not be your issue. Can we also kind of flip the order with you, and will you talk to us first about whether the district court had the authority to undo the earlier order under Rule 59, 60A, 60B, whatever? Sure, I'll do my best. Okay, great. He says he's traveling under 60A. Yeah, go ahead and grab it. I've been there. I understand how this goes. Yeah, so he says he's traveling under 60A. Why isn't he right that 60A is precisely for situations like this? The district court seems to have kind of flubbed it and was just trying to make the best of a bad situation. Well, for a lot of reasons. One, 60A is for clerical mistakes, non-substantive errors. This obviously is substantive despite what was just argued, and I'd like to address that for a minute if I could. I wrote down some of what Mr. Cash said, that all of these defendants participated in the sheriff's investigation and some were even contacted in connection with these requests for documents. That's just not true, and there's no evidence of that in the record, and it's not true. Dr. Van Landingham is a physician. He's a contract physician who worked at the jail. There's just nothing to suggest that he knew anything about this. Same for Dr. DeFrancisco and the jailers. Not only is there nothing to suggest that the jailer, well, the one jailer and the nurses that worked in the jail, not only is there nothing to suggest that they were aware, but they filed affidavits. There's affirmative evidence in the record that they had nothing to do with this. I mean, several of them didn't even work there anymore. But just getting back to my 60A question. Yes, yes. With the substantive rights, I'm sorry. Okay, good, good, good, okay. Let's see. So it's a mistake. It has to be the judge's mistake. So why shouldn't we interpret the judge's ruling the way he says? That the judge says, you know, look, the plaintiffs wanted to dismiss just the name defendants. The parties in the court weren't on the same page. He says that we should read that to say, I just sort of misunderstood what was going on. Well, if that's what the court had intended. Do you need some water? It's totally fine. I can do it. You sure? Yes, sir. If that had been the situation, then Judge Grenade would have just said, oh, I'm sorry, and then reinstated the case. He said this was an error. The parties approached it as a fictitious party pleading issue, as a legal matter, and they briefed those issues. And that was the basis for Judge Grenade's order. And, in fact, if it were a simple matter of, oh, I didn't understand, and you wanted to just leave the fictitious parties in there, that's fine. We can do that. Well, then Judge Grenade wouldn't have gone through the Eleventh Circuit precedent and tried to find a way that that was possible, and she found a way. But, again, how did Judge Grenade have the ability to do anything in this case when after – I mean, jurisdiction is jurisdiction. Either you have it or you don't. Right. And if you don't have it, if the parties voluntarily dismiss a case, jurisdiction ceases unless the district court judge did something beforehand. It says, we therefore find that a district court to retain jurisdiction where the parties dismiss the case by filing a stipulation of dismissal pursuant to 41A1 capital A little 2, either one, the district court may issue the order to retain jurisdiction prior to the filing of the stipulation, or two, the parties must condition the effectiveness of the stipulation on the district court's entry of an order retaining jurisdiction. And none of those things were done in this case. So how, again, did the district court judge have the ability to do anything? Because at the end of the day, the way to proceed then was for them to file a new lawsuit. It could have gone back to the same judge, but it would have been as a related matter. But that's how it would have to have happened. Yes, ma'am. Well, we argue that, and then the alternative, if someone thought that the court did have jurisdiction to enter the order, only then would you get to 60A, 60B, 59E, all of that. So we briefed everything we thought the court might consider. But the question had been, what was the basis for my understanding that the judge wasn't trying to correct some kind of mutual mistake? And we know that she did what she did, deliberately changed her mind because she found a way to allow the case to proceed against fictitious parties only, but in order to fit plaintiffs under that exception, the quad intern exception, they had to request discovery. They had to file a motion requesting discovery, and she ordered them to do that and gave them 30 days to do it, and they did it on the 25th day. But they had to take some action to request discovery in order to fall into even that exception that's been recognized by the Southern District of Alabama. She wouldn't have had to do that if it was a matter of, I didn't mean to let them out, but I'm just going to put them back in now. She couldn't just put them back in now because they couldn't stay there being only fictitious parties. I don't want to start. I'll go ahead. Do you have a 12-second point in your outline somewhere? Okay, very well. Thanks so much. Mr. Walker. Good morning. Good to see you all. I'm here on behalf of five of the defendants, a correctional officer and four part-time or full-time nurses at the jail, and I was going to address the jurisdictional argument we've been talking about so far. I'll start by saying this. Suppose there were no fictitious defendants. Suppose Judge Newsom was the remaining defendant who had never appeared in the lawsuit, had never answered, and a stipulation for dismissal is filed by the plaintiff and all the defendants who have appeared. Judge Legault was right. The case is over. There's a lot of talk in this case about fictitious parties, but it makes no difference. They voluntarily dismissed the lawsuit. At that point, the district court has no jurisdiction to do anything. Rule 60A is the only avenue here that anyone has raised in the case, whether it's the plaintiffs or the district court below, and it simply can't apply. We've already talked about that a lot. You've asked some questions. I think it's important to remember that Rule 60A is unlimited in time. There is no time restriction. Plaintiffs couldn't file a Rule 59E motion because they waited too long after 28 days. Rule 60B motions, which they didn't raise, no one's raised, there's a reasonable time restriction there with a cap at one year. 60A, there's no time limitation. In this case, we are talking about arguing that a district court changes its order to add back in parties, and we're allowing it an unlimited amount of time to do that. That cannot be the rule. There are differences between Rule 59E and 60A. 60A, it's for clerical mistakes. I think we understand what that means. It's not for when an error may affect substantial rights of parties. I can't think of a more substantial right than being included as a defendant or not in the lawsuit. This isn't a 60A case. Can I ask you just a quick question? Am I understanding correctly that the reason that nobody seems to think that 60B is relevant is because of Judge Lagoa's point that with the stipulation of dismissal, jurisdiction evaporated, and there was never a judgment upon which 60B could operate? I think you're correct. Now, I have seen some case law, I think from another circuit, that still applied 60B, I think it was, to a voluntary dismissal. But again, that's never been raised. It wasn't raised by plaintiffs. It wasn't raised by the district court. It's never been argued, and it's never been briefed by anyone. Again, if we're looking at 60B, which one are we looking at? Number one, mistake, excusable neglect. That's very hard to find in this case. What was the mistake? The only mistake would have been on the part of the plaintiff thinking that in the Eleventh Circuit, you can just proceed against fictitious parties. Even the district court below Judge Grenard, when she entered the order reopening the case, even she said, plaintiffs haven't satisfied Dean versus Barber. They haven't adequately described the fictitious defendants. That was the clear law. It was the clear law then, it's the clear law now. What Judge Grenard did instead was, without explaining why she had authority to do what she did, she openly was creating an exception to the Dean versus Barber case. This court, as early as 2020 in the Villalma versus Grueler case said, our precedent has never permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's identity. We have always required an unambiguous description of a defendant that enables service of process. Where's the mistake? I mean, you could have done an officer who was working on Sunday, May 1st at 5 p.m. in the jail. I mean, that's a description. You could have done something . . . It gives some specificity. You could have done something a lot more. We also have to remember that unlike in the Dean versus Barber case, where there was a pro se plaintiff, plaintiffs in this case had retained counsel before Mr. West died. There could have been a lot more investigation and discovery about, okay, who am I going to name in this lawsuit? Instead, we filed a lawsuit, they filed a lawsuit shortly before the statute runs. I won't get into the due diligence arguments, but the point is that 60A just is not going to apply in this type of situation. Even if you were to apply 60B1, there was no mistake. Okay, very well. Thank you so much. Mr. McCloud, I see that you have three minutes. May it please the court. I represent Dr. Robert DeFrancisco, and I'd like to just briefly highlight the distinctive position that Dr. DeFrancisco occupies relative to the other defendants with respect to the adequate description issue or element. The court's heard some argument and certainly has seen in the briefing a great deal to suggest that the complaint was inadequate in its description as to any defendant, but if it was inadequate, if that issue is even reached by the court to begin with, it was doubly so as to Dr. DeFrancisco. The complaint references medical professionals 1 through 10. It references doctors, nurses, technicians, and it alleges an unambiguously medical cause of death, which I recall was bronchopneumonia and organ failure and things of this nature, but there is nothing anywhere in the original complaint to hint, even in the most oblique way, that Mr. West sustained injuries because of a failure by a mental health professional of any stripe. No variant of the word psychologist or psychiatrist appears anywhere in the complaint, and Dr. DeFrancisco is a psychologist. He was not a medical doctor, and he is not alleged to have provided or failed to provide medical treatment to a man who passed away undisputedly due to strictly medical reasons, so there was nothing in the original complaint that could possibly have put Dr. DeFrancisco on notice that he was being sued through some fictitious description had he read the complaint, and of course there isn't anything in the complaint that could have put someone on notice that any mental health professional, whoever he or she may be, was being targeted because there was no description in the body of the complaint as to an act or an omission by a mental health professional, and so the position that Dr. DeFrancisco occupies relative to the other defendants means that it was furthest within the district court's discretion not to allow an amendment adding him, adding Dr. DeFrancisco, to relate back to the filing of the original complaint, and so we urge this as an additional basis on which the court can and should affirm. The court has no questions. I'll cede the rest of my time. Thank you very much, Mr. McCloud. All right, Mr. Cash, you're back up for three. Thank you again, Your Honors. If I can extremely briefly respond, our complaint does describe mental health professionals under the phrase allied health professionals, and we did the best we could with the allegations given that our client was unconscious days from death and we did not have the information. I represent the estate, not Mr. West. The estate did not have the knowledge. The estate did the best job it could given the information it had to describe him in the complaint. Judge Lagoa, to get to your question about Inago, I don't have the case in front of me, but I would point out that Inago does say that a stipulation is effective when all parties to the case sign it, but it doesn't refer to stipulations that dismiss every single party. So I don't know if that's going to be a satisfactory answer, but our stipulation did not state that every party to the case was signing a stipulation intending to dismiss every party to the case. I would agree with you if the stipulation was signed by everyone saying everyone's dismissing, then the district court loses jurisdiction, but that's not what the stipulation that we executed said, and I hope that that helps distinguish Inago from the rest. Can I ask you just a quick question? Sorry for my obsession with 60B. I know that nobody ever did it, but this seems like sort of like a wheelhouse 60B case to me. Am I correct now finally in sort of working my way around to the reason that 60B is not applicable here because by virtue of the stipulation of dismissal that operated of its own force independently self-executing, there was never a judgment upon which 60B could have operated? To answer it precisely for you, I would say 60B applies to judgments. There was no document titled judgment granted by the court in favor of anybody, and so 60B by its terms just doesn't apply because there's no judgment to correct here. However, 60A permits the court to amend and correct orders of its own. There was an order closing the case, and that's the order that 60A was applied to by both of the district judges below to reopen the lawsuit. And so just explain to me again sort of what's wrong with my thinking that the substantive rights of the absent defendants were affected because they were now made parties to a lawsuit that they weren't otherwise parties to? Because they weren't made parties to that lawsuit, they were parties by being virtue of named as fictitious defendants prior to the running of the expiration of the SOL, and they stayed that way when we dismissed some of the parties but not all of them, and nothing about their substantive rights changed. They remained parties to a case. I don't want to sort of like debate semantics, but I mean I guess by virtue of the— maybe this just becomes circular, but by virtue of the court's order, which on its face dismisses the action, they were gone. So now they're back in. But that was a mistake. So that gets you past like the starting gate in 60A maybe, right? Like 60A says it can address certain things. It can't address changes of mind, and you say it wasn't a change of mind, it was a mistake. So now we're past number one. It also says in addition, it can't affect the substantive rights of the parties. So maybe we're just now in this infinite loop that if it was a mistake, their rights can't be substantively affected, and if it wasn't a mistake, then their rights can be substantively affected so the prongs collapse or something. I'm envisioning M.C. Escher and legal proceedings here, but I think the way to break out of this loop is to point out that the parties didn't intend to dismiss those defendants. They were intended to be parties to the case the entire time. There was no point— it's not like, for example, that the parties actually got a clean dismissal, that said, you who—you're dismissed with prejudice, and go hence without day, and then the district court clawed it back and said, I gotcha, you know, no, I've changed my mind, I'm not allowing that, or I'm going to redo a trial or something. That's not the mistake that was made here. That's not the mistake that was being corrected by reopening the case. I hope that helps. Yeah, very good. Thank you all. Well argued all the way around. That case is submitted, and we will be in recess until tomorrow morning at 9 a.m. All rise.